**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

DIEGO ARBOLEDA,

    Plaintiff,

v.                                                              CASE NO:

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.
_____/

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S**
**NOTICE OF REMOVAL AND INCORPORATED MEMORANDUM OF LAW**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. (hereinafter "Defendant"), hereby removes to this Court the action filed against it in the Twentieth Judicial Circuit in and for Lee County, Florida, Civil Division, Case Number 17-CA-001925. As grounds for removal of this action to the United States District Court for the Middle District of Florida, Fort Myers Division, Defendant states as follows:

**FACTUAL BACKGROUND**

1. This action arises out of a motor vehicle accident occurring on October 10, 2016, following which Plaintiff, DIEGO ARBOLEDA (hereinafter "Plaintiff"), submitted a claim for uninsured/underinsured motorist benefits to Defendant, his underinsured motorist (UM) carrier.

2. On May 2, 2017, Plaintiff sent a time-limited Demand Letter to Defendant as the tortfeasor's bodily injury (BI) insurance carrier, and as his own UM carrier. *See* May 2 Demand Letter, attached as Exhibit A.

1

3. In his May 2 Demand Letter, which is 6 pages in length, Plaintiff described in detail the accident and his injuries and treatment – including right hip surgery – and ultimately demanded the BI policy limits of $50,000.00 and the UM policy limits of $100,000.00. *Id.*

4. Plaintiff also indicated that, *excluding* the charges of Gulf Coast Medical Center for the right hip surgery, his medical bills amounted to $31,564.38. *Id.*

5. On June 7, 2017, Plaintiff sent a second time-limited Demand Letter to Defendant, in which he again demanded the UM policy limits of $100,000.00, and to which he attached the $50,028.61 bill from Lee Memorial Health System associated with his hip surgery. *See* June 7 Demand Letter, attached as Exhibit B.

6. Accordingly, as of June 7, 2017, it appears that Plaintiff's medical expenses amounted to $81,592.99.

7. On June 9, 2017, Plaintiff filed a Civil Remedy Notice, claiming that Defendant should have tendered the UM policy limits of $100,000.00. *See* Civil Remedy Notice, attached as Exhibit C.

8. On the same day, Plaintiff filed this action against Defendant in the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida, Civil Division, Case Number 17-CA-001925 (hereinafter the "State Court Action").

9. On June 22, 2017, Defendant was served with a copy of Plaintiff's Complaint (*i.e.*, the initial pleading setting forth the claim for relief upon which this action is based).

10. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed, as it is filed within thirty (30) days of June 22, 2017.

11. Further, Defendant has not previously filed a Notice of Removal of this matter in this Court.

12. Venue of this removal in the Middle District of Florida, Fort Myers Division is proper under 28 U.S.C. § 1441(a) because the Middle District of Florida, Fort Myers Division embraces Lee County, the place where the action is currently pending.

13. Because Defendant is incorporated in the State of Illinois, and its principal place of business is Bloomington, Illinois, Defendant is deemed a citizen of the State of Illinois under 28 U.S.C. § 1332.

14. As explained in more detail below, Plaintiff is a citizen of the State of Florida.

15. Accordingly, there is diversity of citizenship between the parties, as required for removal by 28 U.S.C. § 1332.

16. In addition, as explained in more detail below, the amount in controversy in this matter exceeds $75,000.00, exclusive of interests and costs, as required for removal by 28 U.S.C. § 1332.

17. Pursuant to 28 U.S.C. § 1446(d), Defendant will give written notice of this removal to counsel for Plaintiff.

18. In addition, Defendant will file a copy of this Notice of Removal with the Clerk of the Court for the Twentieth Judicial Circuit in and for Lee County, Florida.

19. For the reasons set forth herein, this Court should accept jurisdiction over this action.

## **MEMORANDUM OF LAW**

This action may be removed pursuant to 28 U.S.C. § 1441(a), and this Court has original jurisdiction of this matter under the provisions of 28 U.S.C. § 1332, because, as explained in more detail below, complete diversity of citizenship exists between the parties, and the amount in controversy exceeds the jurisdictional threshold. In demonstrating the existence of these two "substantive jurisdictional requirements of removal," Defendant is not limited in the "types of

evidence that may be used to satisfy the preponderance of the evidence standard. Defendant[] may introduce [its] own affidavits, declarations, or other documentation." *Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 755 (11th Cir. 2010).

## I. DIVERSITY OF CITIZENSHIP EXISTS BETWEEN THE PARTIES.

For diversity jurisdiction purposes, a party's state citizenship, or domicile, "is determined by two factors: residence and intent to remain." *Jones v. Law Firm of Hill and Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001). In addition, in determining a party's citizenship, "a court should consider both positive evidence and presumptions. One such presumption is that the state in which a person resides at any given time is also that person's domicile." *Id.* (citations omitted). However, because no single factor is conclusive, the court must look to the "totality of the evidence." *Id.*

First, Plaintiff's Complaint alleges that Plaintiff is a resident of Lehigh Acres, Lee County, Florida. *See* Complaint at ¶ 2. In addition, it indicates that the subject accident occurred in Lehigh Acres, Lee County, Florida. *Id.* at ¶ 7. Further, Plaintiff's Civil Remedy Notice indicates that he lives in Lehigh Acres, Florida. *See* Exhibit C. Thus, considering the totality of the evidence, as well as the presumption that the state in which a person resides is also that person's domicile, this Notice of Removal, together with Plaintiff's Complaint, establish by a preponderance of the evidence that Plaintiff is a citizen of the State of Florida.

Pursuant to 28 U.S.C. § 1332(c), a corporation is deemed a citizen of the State by which it has been incorporated and of the State where it has its principal place of business. Defendant is incorporated in the State of Illinois, and its principal place of business is Bloomington, Illinois. Thus, under 28 U.S.C. § 1332, for purposes of this removal, Defendant is deemed a citizen of the

State of Illinois. Accordingly, diversity of citizenship exists between Plaintiff and Defendant, and the first requirement for diversity jurisdiction is satisfied.

## II.  THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00. [1]

In determining the amount in controversy, a district court should look to "the value of the relief being sought by Plaintiff in its complaint." *Viacom, Inc. v. Zebe*, 882 F. Supp. 1063, 1065 (S.D. Fla. 1995). Of course, deciphering such value can be difficult because "a plaintiff who has chosen to file her case in state court will generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint." *Lowery v. Alabama Power Co.*, 483 F. 3d 1184, 1213 n.63 (11th Cir. 2007). Thus, where a "plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, Inc., 269 F. 3d 1316, 1319 (11th Cir.2001).

Meeting this burden is helped by the fact that, when a "plaintiff's claim . . . is specific and in a pleading signed by a lawyer, [it] deserves deference and a presumption of truth." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The court should "assume that plaintiff's counsel best knows the value of his client's case and . . . that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences." *Id.* Accordingly, where a plaintiff claims a series of damages, she claims that she is entitled to each type of damage listed, and each of those claims "deserves defense and a presumption of truth." *Id.*

---

[1] Defendant's position that the jurisdictional amount has been met in this matter is not an endorsement as to the accuracy or the merits of any of the allegations in Plaintiff's Complaint, Demand Letters or Civil Remedy Notice.

5

The deference and presumption of truth afforded to a plaintiff's claims are especially important where no specific amount of damages is claimed because, under such circumstances, "removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams*, 269 F. 3d at 1319; *Roe v. Michelin North America, Inc.*, 613 F. 3d 1058, 1062-63 (11th Cir. 2010). "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe*, 613 F. 3d at 1061-62. District court judges may also "appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." *Id.* at 1063. For example, where the complaint lacked a specific damage request, the court found that "the plaintiff's allegations – that her slip and fall resulted in severe physical injury, lost wages, lost enjoyment of life, and pain and suffering – appeared to comprise a claim worth more than $75,000." *Id.* (citing *Gebbia v. Wal–Mart Stores, Inc.*, 233 F. 3d 880, 882 (5th Cir. 2000)); *see also Luckett v. Delta Airlines, Inc.*, 171 F. 3d 295 (5th Cir. 1999) ("[A]llegations of property damage, travel expenses, [an] emergency ambulance trip, six days in the hospital, pain and suffering, humiliation, and a temporary inability to do housework . . . combined to meet the jurisdictional requirement even though no amount of damages was pled.").

Even if the amount in controversy is not "facially apparent" from the complaint, the removal does not fail, and the inquiry does not end. Indeed, "[i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams*, 269 F. 2d at 1319. To this end, district courts often consider "affidavits, declarations or

6

other documents," submitted along with the notice of removal, including demand letters and their supporting documentation.

In order to demonstrate by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the demand letter must contain an "honest assessment" of the damages claimed. *See Golden*, 1 F. Supp. 2d at 1364; *see also Cross v. Wal–Mart Stores*, 2011 WL 976414, at *2 (M.D. Ga. 2011) ("More weight should be given to a settlement demand if it is an honest assessment of damages."). Courts have found that such an "honest assessment" exists where the demand letter "provide[s] specific information . . . to support [the plaintiff's] claim for damages," *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (quotations omitted), where the demand letter includes a "detailed accounting of [the plaintiff's] injuries, medical treatments, prognosis, and future expenses," *Crutchfield v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 616921, at *2 (M.D. Fla. 2013), where the "demand package . . . is based on medical records provided by the Plaintiff," *Katz v. J.C. Penney Corp., Inc.*, 2009 WL 1532129, at *5 (S.D. Fla. 2009), and where the demand letter "delineates the extent of [the plaintiff's] injuries, the physicians who have treated her, and the medical care she received from each of those physicians," *Wilson v. Target Corp.*, 2010 WL 3632794, at *4 (S.D. Fla. 2010).

In addition, this Court has also found that a Civil Remedy Notice has sufficed as evidence of the amount in controversy when it contained an explicit assertion about the value of the claim. *See Wilt v. Depositors Ins. Co.*, 2013 WL 6195768 (M.D. Fla. Nov. 16, 2013). Indeed, in *Wilt*, the defendant attempted to remove the case to federal court based on only the plaintiff's complaint and a letter memorializing her demand for an amount greater than the jurisdictional threshold. *Id.* at *2. In response to the plaintiff's motion to remand, the defendant "drew the Court's attention to . . . a Civil Remedy Notice" which stated, "[i]t is abundantly clear, from the medical

7

documentation, and the statement under oath provided by Mrs. Wilt, that her claim has a value well in excess of the remaining available policy limits" (which were greater than $75,000.00). *Id.* at \*3. It should be noted that the defendant did not provide the Court with the "medical documentation" nor the "statement under oath" described the plaintiff's Civil Remedy Notice. This Court found that the plaintiff's Civil Remedy Notice constituted "further evidence from which it can be reasonably inferred that the amount in controversy exceeds $75,000," and ultimately concluded that, based on plaintiff's complaint, demand and Civil Remedy Notice, the defendant had met its burden of establishing the jurisdictional threshold by a preponderance of the evidence. *Id.* at \*7.

Finally, in those cases where the removing defendant may later become entitled to set-offs for proceeds paid to or on behalf of a plaintiff for the damages she has allegedly incurred, this Court "must [nevertheless] look to the amount in controversy *at the time of removal*. . . . [S]ubject matter jurisdiction is not defeated simply because the parties might anticipate a future reduction in recoverable damages." *Stramiello v. Petsmart, Inc.*, 2010 WL 2136550, \*4 (M.D. Fla. May 26, 2010) (defendant established the amount in controversy because the plaintiff was entitled to seek $108,351.92 in medical expenses, despite that defendant would be entitled to an $85,904.97 setoff) (emphasis added). Accordingly, "any set-off to which Defendant may be entitled is irrelevant at the jurisdictional stage, as the Court must look at the amount in controversy *at the time of removal*." *Black v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 4340281 (S.D. Fla. Oct. 22, 2010) (disregarding the fact that defendant was entitled to a $34,000.00 setoff) (emphasis added).

### a. Plaintiff's Complaint

In his Complaint, Plaintiff alleges that, as a result of the subject accident, he "suffered permanent bodily injury and resulting pain and suffering, disability, disfigurement, loss of the

8

capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, aggravation of a previously existing condition and/or activation of a latent condition;" that his "injuries are permanent and continuing;" and that he "will continue to suffer said losses in the future." *See* Complaint at ¶ 13. Thus, Plaintiff has alleged that he is entitled to damages for past and future medical expenses, as well as past and future pain and suffering.

These allegations must be considered with "deference and a presumption of truth." *Burns*, 31 F.3d at 109. In addition, these allegations are similar to those discussed in *Gebbia* and *Luckett*, which "appeared to comprise a claim worth more than $75,000." *See Gebbia*, 233 F. 3d 880; *Luckett*, 171 F. 3d 295. Thus, it is facially apparent from Plaintiff's Complaint that the amount in controversy in this matter exceeds $75,000.00.

   b.  **Plaintiff's Demand Letters**

Notwithstanding the fact that the jurisdictional amount is facially apparent from Plaintiff's Complaint, there is additional evidence attached to this Notice of Removal which further proves by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. As previously mentioned, on May 2, 2017, Plaintiff sent a Demand Letter to Defendant, in which he demanded the BI policy limits of $50,000.00 and the UM policy limits of $100,000.00. *See* Exhibit A. In this Demand Letter, which is 6 pages in length, Plaintiff described in extensive detail the accident; his position on liability; his medical treatment, including a right hip surgery; and his medical bills, which, *excluding* the charges of Gulf Coast Medical Center for the right hip surgery, amounted to $31,564.38. *Id.* Plaintiff also attached copies of his medical records and bills to the May 2 Demand Letter. *Id.* On June 7, 2017, Plaintiff sent a second Demand Letter to Defendant, in which he again insisted that his damages, both economic and noneconomic, have a value "far in excess" of the combined bodily injury and UM limits of $150,000.00, and again demanded the

UM policy limits of $100,000.00. Plaintiff attached the $50,028.61 bill from Lee Memorial Health System associated with his hip surgery[2] to the June 7 Demand Letter. Thus, combining the representations made in both Demand Letters, it appears that, as of June 7, Plaintiff's medical expenses totaled $81,592.99 (*i.e.*, an amount greater than the jurisdiction threshold).

The demands made in Plaintiff's Demand Letters appear to be based on the medical services and charges incurred by Plaintiff thus far. These include, but are not limited to, the surgical reparation of a labral tear in his right hip with arthroscopy, acetabular chondroplasty and femoral osteochondroplasty, which Plaintiff claims to have resulted in a permanent impairment of his hip. *See* Exhibits A, B and C. Further, in support of the claims made in his Demand Letters, Plaintiff provided copies of his medical records and bills, including the Lee Memorial Health System bill associated with his hip surgery, which reflects charges of $50,028.61. *See* Exhibits A and B.

Plaintiff's Demand Letters clearly "provide specific information . . . to support [Plaintiff's] claim for damages," as well as a "detailed accounting of [Plaintiff's] injuries, medical treatments, prognosis, and future expenses." *See Jackson*, 651 F.Supp.2d 1279; *Crutchfield*, 2013 WL 61692. They are also "based on medical records provided by the Plaintiff." *See Katz*, 2009 WL 1532129. Inevitably, Plaintiff considered his alleged injuries, his past medical treatment (including his right hip surgery), his past medical charges, and his potential noneconomic damages, when he made his demands for the BI policy limits of $50,000.00 and the UM policy limits of $100,000.00. *See* Exhibits A and B. As a result, Plaintiff's Demand Letters constitute an "honest assessment" of the damages claimed in this lawsuit, and they further establish by a preponderance of the evidence that the amount in controversy in this matter exceeds $75,000.00. *See Golden*, 1 F. Supp. 2d at 1364; *Cross*, 2011 WL 976414.

---

[2] This bill appears to be the "Gulf Coast Medical Center" bill referenced in Plaintiff's May 2 Demand Letter.

c. **Plaintiff's Civil Remedy Notice**

In addition to Plaintiff's Complaint and Demand Letters, there is a third piece of evidence of the amount in controversy. As mentioned previously, on June 9, 2017, Plaintiff filed a Civil Remedy Notice against Defendant. *See* Exhibit "C." The Civil Remedy Notice stated that Plaintiff "underwent a significant amount of medical care and treatment, culminating in surgical repair of his left (sic) hip labral tear with arthroscopy, acetabular chondroplasty and femoral osteochondroplasty," that the injury to his left hip "resulted in a permanent impairment," and that "[Plaintiff's] claim far exceed[s] the total available limits, considering his economic and non-economic damages." *Id.* Like the Civil Remedy Notice in *Wilt*, Plaintiff's Civil Remedy Notice makes an explicit assertion regarding the value of Plaintiff's claim, and, as such, this Court may consider Plaintiff's Civil Remedy Notice as "further evidence from which it can be reasonably inferred that the amount in controversy exceeds $75,000." *Id.* at *7.

Ultimately, the allegations made in Plaintiff's Complaint make it facially apparent that, at this time of removal, the jurisdictional threshold has been met. To be sure, however, Plaintiff's Demand Letters provide an "honest assessment" that the value of Plaintiff's claim exceeds $150,000.00 (*i.e.*, double the jurisdictional threshold), and demand the BI limits of $50,000.00 and the UM policy limits of $100,000.00. Further, Plaintiff's Civil Remedy Notice indicates that his damages exceed the jurisdictional threshold as well. Based on the foregoing, Defendant has proven by a preponderance of the evidence that the second requirement for diversity jurisdiction under 28 U.S.C. § 1332 has been met.

## CONCLUSION

For the reasons stated above, all requirements for diversity jurisdiction under 28 U.S.C. § 1332 have been met. First, complete diversity of citizenship exists between Plaintiff and

Defendant. Second, the amount in controversy exceeds the jurisdictional threshold. Thus, it is proper for this Court to exercise subject matter jurisdiction over this action.

**WHEREFORE**, Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., respectfully requests that the State Court Action now pending in the Twentieth Judicial Circuit in and for Lee County, Florida be removed to the United States District Court for the Middle District of Florida, Fort Myers Division, and further requests that this Court assume jurisdiction over this action as provided by law.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on July 19, 2017, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, and that I emailed the foregoing document and the notice of electronic filing to the following non-CM/ECF participants:

**Gregg M. Hollander, Esq.**
Florida Bar No. 973350
THE HOLLANDER LAW FIRM, P.A.
7000 W. Palmetto Park Rd., Suite 500
Boca Raton, FL 33433
Telephone: (561) 347-7770
Fax: (561) 347-9929
E-mail: ghollander@hollanderlawfirm.com
E-mail: amy@hollanderlawfirm.com
*Attorneys for Plaintiff*

/s/ *Adam C. Shelton*
**Adam C. Shelton, Esq.**
Florida Bar No: 572578
**Kendall O. Pfeifer, Esq.**
Florida Bar No: 105445
SHELTON MCKEAN
9700 9th St. N., Suite 400
St. Petersburg, FL 33702
Telephone: (727) 316-6330
Fax: (727) 316-6368
E-mail: service-ashelton@sheltonmckean.com
E-mail: service-kpfeifer@sheltonmckean.com
*Attorneys for Defendant*